IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


GARY C. GOSHA, an individual; and KIT M. GOSHA, an individual,

        Plaintiffs,

    v.

BANK OF NEW YORK MELLON CORPORATION FKA THE BANK OF NEW YORK, as Trustee (CWALT 2005-72), a Delaware Corporation; BAYVIEW LOAN SERVICING LLC, a Florida Corporation; and CLEAR RECON CORP, a California Corporation,

        Defendants.

No. 3:19-cv-00470-HZ

OPINION & ORDER

Gary C. Gosha
Kit M. Gosha
17590 SW Cheyenne Way
Tualatin, OR 97062

    Pro Se Plaintiffs

Peter J. Salmon
ALDRIDGE PITE, LLP
4375 Jutland Drive, Suite 200
San Diego, CA 92117

    Attorney for Defendants


1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Pro Se Plaintiffs Gary C. Gosha and Kit M. Gosha bring this action against Defendants Bank of New York Mellon ("BONYM"), Bayview Loan Servicing LLC ("Bayview"), and Clear Recon Corp ("Clear Recon") for breach of contract, unfair trade practices under Or. Rev. Stat. § ("ORS") 646.608, violations of the Fair Debt Collection Practices Act ("FDCPA"), and violations of the Real Estate Settlement Procedures Act ("RESPA"). Plaintiffs also seek a declaratory judgment regarding: (1) the rights of the parties under the Oregon Trust Deed Act, ORS 86.705; and (2) Defendant BONYM's standing under the Note and Deed of Trust. Defendants now move to dismiss this action under Federal Rule of Civil Procedure 12(b)(6). The Court grants in part and denies in part Defendants' motion.

## BACKGROUND

Nearly fourteen years ago, Plaintiffs obtained an adjustable rate loan to refinance their home in Tualatin, Oregon. *Gosha v. Bank of New York Mellon Corp.*, No. 3:16-CV-00073-BR, 2016 WL 7238927, at *1–2 (D. Or. Dec. 13, 2016), *aff'd*, 707 F. App'x 484 (9th Cir. 2017). In September 2011, after their payments began to increase and Plaintiffs sought assistance from their loan servicer, Plaintiffs stopped making payments and defaulted on their loan. *Id.*; Compl. ¶ 29, ECF 1.

In the years since, Defendants have attempted three times to nonjudicially foreclose on Plaintiffs' home. Plaintiffs filed their first action to stop the first nonjudicial foreclosure in this Court on January 15, 2016. Compl. ¶ 18; Compl., No. 3:16-CV-00073-BR, ECF 1. Ultimately, Judge Brown dismissed that suit under Fed. R. Civ. P. 12(b)(6). Compl. ¶ 18; *Gosha*, 2016 WL 7238927. Defendants then voluntarily rescinded the non-judicial foreclosure. Compl. ¶ 18.

Defendants asserted that they rescinded the foreclosure due to the expiration of the period to postpone under the Oregon statute. Defs. Mot. Disburse 2–3, No. 3:16-CV-00073-BR, ECF 165.

On June 14, 2018, Defendant Bayview—the loan servicer—invited Plaintiffs to once again participate in the Oregon Foreclosure Avoidance Program ("OFAP"). Compl. ¶ 25. During the OFAP, Defendant Bayview produced a copy of the Note. Compl. ¶ 31. Plaintiffs allege that the Note is not endorsed to any party or endorsed in blank, and the lender identified is America's Wholesale Lender ("AWL"). Compl. ¶¶ 32–34, Ex. C. In addition, Defendant Bayview provided a Note payment history and payoff quotes that included "additional charges," increasing the money demanded from the $320,000 in the initial loan to $536,600. Compl. ¶ 35, Ex. A. Plaintiffs, citing RESPA, subsequently sent Defendant Bayview a "Qualified Written Request" for information related to the additional charges and Defendant BONYM's status as the beneficiary of the Deed of Trust. Compl. ¶ 36, Ex. D. Defendant Bayview only responded to Plaintiffs' request for "beneficiary info," naming Defendant BONYM as the owner of the loan. Compl. ¶ 37, Ex. D.

Plaintiffs suggest that Defendant Bayview engaged in "nefarious behavior" during the OFAP conference. Plaintiffs note that Defendant Bayview and the OFAP facilitator would not reset the conference so that Plaintiffs could be represented by counsel, "deliberately thwart[ing]" their ability to discuss foreclosure avoidance. Compl. ¶ 43. The OFAP conference "ended with an adverse result for" Plaintiffs because Defendant Bayview was provided with a certificate of compliance, which is required for them to pursue the non-judicial foreclosure under Oregon law. *Id.*

On October 10, 2018, Defendant Clear Recon filed its second Notice of Default in Washington County, Oregon. Compl. ¶ 47, Ex. J. On October 29, 2018, Plaintiffs sent a dispute

letter to Defendant Clear Recon demanding that the foreclosure be rescinded. Compl. ¶ 47. The next day, Defendant Clear Recon rescinded the second notice of default and acceleration of the debt. Compl. ¶ 48, Ex. K.

On December 22, 2018, Plaintiffs were served with another Trustee's Notice of Sale. Compl. ¶ 49 Ex. A. The Notice indicates that the current beneficiary of the deed of trust is Defendant BONYM and the trustee is Defendant Clear Recon. Compl. Ex. A at 4–5. The Notice also reflects delinquent payments by Plaintiffs beginning in September of 2011, with a total required to reinstate of $247,892.26. *Id.*

In conjunction with their Complaint, Plaintiffs filed a Motion for a Temporary Restraining Order ("TRO") to restrain Defendants from conducting a foreclosure sale of Plaintiffs' home, which was scheduled for April 23, 2019. Pls. Mot. TRO 2, ECF 2. The Court granted the Motion for a TRO on April 15, 2019, Order, ECF 18, and, after a hearing on the Motion for a Preliminary Injunction, the Court entered a preliminary injunction staying the foreclosure on June 5, 2019, Op. & Order, ECF 35. Defendants have since rescinded the third foreclosure. Pls. Req. Judicial Notice, ECF 41.

### STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n, Inc. v. City & Cnty. of S.F.*, 277 F.3d 1114, 1120 (9th Cir. 2002). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In other words, a complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

However, the court need not accept conclusory allegations as truthful. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations.") (internal quotation marks, citation, and alterations omitted). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

Courts must liberally construe pro se pleadings. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Additionally, a court cannot dismiss a pro se complaint without first explaining to the plaintiff the deficiencies of the complaint and providing an opportunity to amend. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). Dismissal of a pro se complaint without leave to amend is proper only if it is clear that the deficiencies of the complaint could not be cured by amendment. *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995).

///

///

///

# DISCUSSION

Defendants move to dismiss Plaintiffs' claims under Rule 12(b)(6).[1] The Court addresses each claim and the parties' respective arguments below.

## I. Claims for Declaratory Relief

Defendants contend that Plaintiffs' claims for declaratory relief are barred by the doctrines of claim preclusion and issue preclusion, arguing that the issues presented by these claims were already adjudicated by Judge Brown in the prior litigation. Defs. Mot. 11, ECF 28. Defendants also assert that this Court cannot review claims regarding the OFAP and that its foreclosure is not barred by the statute of limitations.[2]

### A. Claim & Issue Preclusion

Plaintiffs allege that Defendant BONYM lacks "standing" to enforce the note because: (1) the note is not endorsed; (2) there are no valid assignments of the Deed of Trust or Note; (3) there are no other documents that show how Defendant BONYM acquired the Note; and (4) the

---

[1] In their initial motion, Defendants moved to dismiss Plaintiffs' Breach of Contract claim but withdrew that motion in their Reply. Defs. Reply, ECF 39. In connection with this motion, the parties also filed requests for judicial notice. Def. Reqs. Jud. Notice, ECF 30, 40; Pl. Req. Jud. Notice, ECF 41. To the extent that the Court has relied on those documents—which largely consist of court documents and public records—in its discussion, those requests are granted. *United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003); *K.F. Jacobsen & Co. v. Gaylor*, 947 F. Supp. 2d 1120, 1122–23 (D. Or. 2013) (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir.2006)) ("A court may take judicial notice of complaints and briefs filed in another case to determine what issues were before that court and were actually litigated."). In addition, the Court has relied on certain documents attached to Plaintiffs' Complaint in resolving this motion. *See Ritchie*, 342 F.3d at 908 ("A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").

[2] Though Defendants acknowledge Plaintiffs' claim for declaratory relief regarding Defendants' lack of compliance with the Oregon Trust Deed Act in paragraphs ¶¶ 65, 67, and 68, *see* Def. Mot. 7, they do not appear to move on these specific claims. Accordingly, the Court has not addressed them here.

Deed of Trust lien is incident to the Note and the Deed of Trust cannot be enforced without a legal right to enforce the Note. Compl. ¶¶ 70–74. Defendants argue that Plaintiffs' claim that Defendant BONYM lacks the authority to enforce the Note and foreclose on the Deed of Trust is barred by the doctrine of issue preclusion because these issues were addressed by Judge Brown in the prior litigation. Defs. Mot. 11–12.

As the United States Supreme Court recently reiterated, "[o]nce a court has decided an issue, it is 'forever settled as between the parties[.]'" *B & B Hardware, Inc. v. Hargis Indus., Inc.,* 135 S.Ct. 1293, 1302–03 (2015) (quoting *Baldwin v. Iowa State Traveling Men's Assn.,* 283 U.S. 522, 525 (1931)). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States,* 440 U.S. 147, 153–54 (1979). The general rule is that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *B & B Hardware, Inc.,* 135 S.Ct. at 1302–03 (quoting Restatement (Second) of Judgments § 27, p. 250 (1980)).

In the prior litigation, Plaintiffs sought a declaration that: (1) the Trust Deed is void because AWL did not exist "as it was written in the document on October 24, 2005"; (2) "all transactions related to the Trust Deed, including Defendant's right to receive payments under it, all assignments of it, and this foreclosure, are also void and have no legal effect"; (3) the Trust Deed is not a valid lien; and (4) Defendant BONYM is not a proper beneficiary under the OTDA and cannot foreclose in the manner it has chosen. Second Am. Compl. ¶¶ 124–28, No. 3:16-CV-

00073-BR, ECF 70. There, as Judge Brown acknowledged in her opinion, Plaintiffs also alleged that the Note was forged and unendorsed. *See id.* at ¶¶ 39, 74(e). Judge Brown concluded:

> AWL was a legal entity at the time of the loan, and, therefore, the Deed executed between AWL and Plaintiffs is not invalid as Plaintiffs allege. Although it could be argued that MERS did not have the authority to assign the deed in 2012, the subsequent assignment by Countrywide to BONYM in 2015 was properly recorded prior to any foreclosure action by BONYM or Bayview.

*Gosha v. Bank of New York Mellon Corp.*, No. 3:16-CV-00073-BR, 2016 WL 7238927, at *5–6 (D. Or. Dec. 13, 2016).

Here, Plaintiffs similarly allege that Defendant BONYM lacks "standing" to enforce the note because it is not endorsed and there are no valid assignments of the Deed of Trust or Note. Compl. ¶ 70. Plaintiffs also allege that the assignments of the Deed of Trust to Defendant BONYM were null and void because of faulty MERS assignments in 2013 and 2015 and because AWL stopped doing business in 2011. Compl. ¶¶ 39–41, 73.

Plaintiffs' claims are barred by issue preclusion. The arguments in both cases are similar, if not identical. In both cases, the issue of Defendant BONYM's standing to enforce the Note was litigated, and Judge Brown ultimately determined that the 2015 assignment was properly recorded prior to any foreclosure by Defendant BONYM such that Plaintiffs' claim for declaratory relief failed. Plaintiffs' case was dismissed with prejudice, and a Judgment was entered for Defendants. Accordingly, Plaintiffs in this action are precluded from relitigating Defendant BONYM's ability to enforce the Note because of allegedly invalid assignments by MERS or because AWL stopped doing business in 2011.

### B. Oregon Foreclosure Avoidance Program

Plaintiffs seek a declaration that Defendant Clear Recon conducted an unlawful non-judicial foreclosure because it did not offer Plaintiffs the option of participating in the OFAP

prior to the third foreclosure. Compl. ¶ 66. Defendants argue that Plaintiffs are barred from bringing claims regarding the OFAP because the statute does not provide for judicial review of the OFAP. Defs. Mot. 12. In their response, Plaintiffs assert that they do "not seek a judicial review of the prior OFAP mediation process or its [Certificate of Compliance]." Pls. Resp. 13, ECF 37. Instead, they explain that "[t]he legal question raised is whether a new OFAP resolution conference is required once all prior collection remedies authorized under Section 22 of the Deed of Trust were abated by the October 30, 2019 rescission[.]" *Id.* at 13–14.

Plaintiffs' claim fails as a matter of law. The Court finds no statutory authority for Plaintiffs' assertion that the rescission of the non-judicial foreclosure required a new OFAP resolution conference. Under ORS 86.726, "a beneficiary that intends to foreclose a residential trust deed shall first request a resolution conference with the grantor before the beneficiary or the trustee files a notice of default[.]" Upon completion of certain requirements, the OFAP conference facilitator issues a certificate of compliance to the beneficiary, which expires one year after the date of service of the certificate. ORS 86.736(1). Under to ORS 86.752(4)(a), to foreclose a trust deed by advertisement and sale the trustee needs to file, among other things, a valid and unexpired certificate of compliance. Thus, the statutes at issue do not require a beneficiary to request a new resolution conference with the grantor after rescission of a notice of default.

Here, there is no dispute that the parties participated in an OFAP conference and that Defendants were issued a certificate of compliance on August 29, 2018. Compl. Ex. H at 8. Thus, when Defendants instituted the present foreclosure in December of 2018, they had already requested a foreclosure conference and possessed an unexpired certificate of compliance as

9 – OPINION & ORDER

required by the statute. Accordingly, this aspect of Plaintiffs' claim for declaratory relief is dismissed.

C. Statute of Limitations

Plaintiffs also seek a declaration that Defendants are barred from foreclosing on the Note because the six-year statute of limitations found in Oregon's Uniform Commercial Code has expired. Compl. ¶ 69. Defendants move to dismiss this claim, arguing that the statute of limitations has not yet run because the loan was accelerated in 2013 and the statute of limitations was tolled during the prior litigation. Defs. Mot. 15-16. Plaintiffs respond that the 2013 Notice of Acceleration is not a legitimate document and that any tolling was mooted when Defendants voluntarily rescinded the foreclosure. Pls. Resp. 7–8.

Neither party, however, has identified the correct statute of limitations governing non-judicial foreclosures of a trust deed. Rather, the statutes of limitations governing mortgages in ORS 88.110 and 88.120 appear to apply to this case. *See* ORS 86.815 ("The foreclosure of a trust deed by advertisement and sale or the foreclosure of a trust deed by judicial procedure shall be commenced within the time, including extensions, provided by ORS 88.110 [Duration of real property mortgage lien] and 88.120 [When foreclosure not barred by ORS 88.110] for the foreclosure of a mortgage on real property."); *see also* Oregon State Bar, Real Estate Deskbook at 23-8 (2015) ("The time limitations for commencing the foreclosure of a mortgage, as provided by ORS 88.110 and ORS 88.120, apply to the foreclosure of a trust deed by judicial procedure, as well as the non-judicial foreclosure of a trust deed."). ORS 88.110, applicable here, provides a ten-year limitations period from "the later of the date of maturity of the mortgage debt, the expiration of the term of the mortgage debt[,] or the date to which the payment thereof has been extended by agreement of record." For the purposes of this Opinion only, the Court finds that the

maturity date of the debt is November 2035, Compl. Ex. C at 2 (definition of the "maturity date" in the Note); *see also* Compl. Ex. E at 2 ¶ F. So, the statute of limitations has not run, and Plaintiffs' claim that Defendants' foreclosure is untimely fails.

## II.   Oregon Unlawful Trade Practices Act

Plaintiffs' third claim for relief alleges that Defendants violated § 646.608 of the Oregon Unlawful Trade Practices Act ("OUTPA")—and, more specifically, Oregon Administrative Rule ("OAR") 137-020-0805(4)—by making misrepresentations during the June 2018 OFAP mediation, attempting to foreclose without legal authority, and engaging in other allegedly unlawful behavior. Compl. ¶¶ 83–97. Plaintiffs allege "Defendants omitted material facts, made false statements, produced incomplete statutorily required documents, and/or failed to produce those documents, or produced null and void documents" as detailed in ¶¶ 25–55 of the Complaint. Compl. ¶ 89.

OAR 137-020-0805(4) provides "a mortgage loan servicer engages in unfair or deceptive conduct in trade or commerce if the mortgage loan servicer: misrepresents any information set forth in an affidavit, declaration, or other sworn statement detailing a borrower's default and the servicer's right to foreclose."[3] In bringing this claim, Plaintiffs fail to identify a misrepresentation of information by Defendants as set forth in an affidavit, declaration, or other sworn statement detailing Plaintiffs' default and Defendants' right to foreclose. However, elsewhere in the Complaint, Plaintiffs assert that Defendant Bayview declared in the OFAP proceeding that Defendant BONYM was the beneficiary of the Deed of Trust. Compl. ¶ 40.

---

[3] Under ORS 646.608(4), "[a]n action or suit may not be brought under subsection (1)(u) of this section [making it unlawful to "engage[] in any other unfair or deceptive conduct in trade or commerce"] unless the Attorney General has first established a rule in accordance with the provisions of ORS chapter 183 declaring the conduct to be unfair or deceptive in trade or commerce."

11 – OPINION & ORDER

Plaintiffs then proceed to allege that both assignments naming Defendant BONYM as the beneficiary are null and void. Compl. ¶ 41. To the extent that Plaintiffs are claiming these statements are the misrepresentations that serve as the basis of Plaintiffs' claim that Defendants violated the OAR, Plaintiffs' claim fails. As described above, Judge Brown addressed this very issue in the prior case and concluded that Defendant BONYM is the valid beneficiary on the Deed of Trust. *See* Supra Part I(A). Thus, Plaintiffs' OUTPA claim is dismissed.

### III. Real Estate Settlement Procedures Act

Plaintiffs allege Defendant Bayview violated the Real Estate Settlement Procedures Act ("RESPA") when it failed to reasonably investigate Plaintiffs' servicing information requests for documents establishing that Defendant BONYM was the beneficiary of the Deed of Trust and for invoices for the "extra charges" listed on their Note payment history. Compl. ¶¶ 35–36, 112–16, Ex. D. Defendant Bayview responded to Plaintiffs' request by stating that Defendant BONYM was the beneficiary but gave no further response to Plaintiffs' questions. Compl. Ex. D.

Defendants move to dismiss this claim on the grounds that it "rests on the conclusory allegation that [Defendant] Bayview failed to reasonably investigate and respond to the request" and "Plaintiffs admitted to receiving the payment history for the loan showing each transaction comprising the categories of payoff statement items that they disputed" as part of the OFAP. Defs. Mot. 18 (citing Compl. Ex. H). Without citing the statute or any case law, Defendants broadly assert that "RESPA does not require total borrower satisfaction with the response to a qualified written request." *Id.*

Without further development from either party on the legal requirements under RESPA, the Court declines to dismiss this claim for relief. The RESPA section cited by Plaintiffs in their complaint provides:

> Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—
>
>> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>>> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>>
>> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>>> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2)(B), and (C).

"[A]ny request for information made with sufficient detail is enough under RESPA to be a qualified written request and thus trigger the servicer's obligations to respond." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012) (citing *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011)). The Ninth Circuit has held that "under § 2605(e), a borrower's written inquiry requires a response as long as it (1) reasonably identifies the borrower's name and account, (2) either states the borrower's 'reasons for the belief . . . that the account is in error' or 'provides sufficient detail to the servicer regarding other information sought by the borrower,' and (3) seeks 'information relating to the servicing of [the] loan.'" *Id.* at 666 (quoting 12 U.S.C. § 2605(e)(1)(A)–(B)). As to the third requirement, "servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . , and making the payments of principal and

interest and such other payments." *Id.* It does not include "the transactions and circumstances surrounding a loan's origination." *Id.* at 666–67. "The statute thus distinguishes between letters that relate to borrowers' disputes regarding servicing, on the one hand, and those regarding the borrower's contractual relationship with the lender, on the other." *Id.* at 667. A request for documents detailing unpaid balance and other charges may relate to the servicing of the loan. *See Petrovich v. Ocwen Loan Servicing LLC*, 716 F.App'x. 614, 617–18 (9th Cir. 2017) (finding that a request for "an itemized and verified payoff statement" was a qualified written request under *Medrano*).

Here, Plaintiffs sought in an email to foreclosure counsel: (1) documentation supporting the claim that Defendant BONYM was the owner of the loan; (2) detailed invoices for items coded as attorney advances, statutory expenses, and "F/C and B/R expenses" that were included in a document titled "Gosha_Payment History.pdf"; (3) documents detailing the unpaid balance and other charges on the loan the date that Defendant Bayview received the loan from Bank of America; and (4) documents detailing Bank of America's payment history during the time it serviced the loan. Compl. Ex. D at 1. Defendant Bayview's response only included the name of the owner of the loan account, Defendant BONYM. *Id.* at 3. It did not otherwise provide any detail as to the payment history or charges as requested by Plaintiffs or any detail as to why it could not provide this information. Defendants argue that Plaintiffs "admitted to receiving the payment history for the loan showing each transaction comprising the categories of payoff statement items that they disputed."[4] Defs. Mot. 18 (citing Compl. Ex. H). But the cited exhibit

---

[4] Defendants also argue in their reply that these charges do not relate to the servicing of the loan. Defs. Reply 12-13. Because this argument was made for the first time in reply, the Court declines to further consider it. *See, e.g., Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir.2003)) (district court need not consider arguments raised for first time in reply briefs).

14 – OPINION & ORDER

does not support this contention. Indeed, in that document Plaintiffs assert that they sought—and did not receive—a detailed explanation of the charges appearing on the payment history. Compl. Ex. H at 2. Accordingly, Plaintiffs have plausibly alleged Defendants failed to respond to their QWR in violation of RESPA, and the Court declines to dismiss this claim for relief.

IV. **Fair Debt Collection Practices Act**

Plaintiffs also allege that Defendant Clear Recon violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692f(6), in commencing a non-judicial action without authority under the Deed of Trust as set forth in ¶¶ 49–55 of the Complaint. Compl. ¶ 108. They further allege that Defendant Clear Recon violated the FDCPA by commencing and halting its prior non-judicial foreclosures with no intent of taking possession of the property. Compl. ¶ 109. Paragraphs 49–55 point to various statutory and contractual deficiencies in the current foreclosure, including Defendants' failure to: (1) send Plaintiffs a Notice of Intent to Accelerate as required by § 18 of the Deed of Trust; (2) provide a notice of the right to bring a court action under § 22 of the Deed of Trust; (3) notify Plaintiffs of their statutory right to participate in another OFAP as required by the OTDA; (4) provide a response to Plaintiffs' QWR; and (5) serve a Danger Notice in the Trustees Notice of Sale as required by the OTDA. Defendants move to dismiss Plaintiffs' FDCPA claims on the ground that Defendants complied with each of the aforementioned statutory requirements.

15 U.S.C. § 1692f(6)(A) makes it unlawful to "tak[e] or threat[en] to take any nonjudicial action to effect disposition or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest." As described in the Court's June 2019 decision granting Plaintiffs' request for a preliminary injunction, Plaintiffs have plausibly alleged that Defendants failed to comply with § 22 of the Deed of Trust. Op. &

Order at 5–6. Assuming, for the purposes of this decision only, that this failure deprived Defendants of a present right to possess the property claimed, the Court finds that Plaintiffs have plausibly alleged a claim for a violation of the FDCPA.

III.     **Leave to Amend**

Generally, "the court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This is particularly true with regard to *pro se* plaintiffs: "Leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to *pro se* plaintiffs." *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004) (citations and quotations omitted); *cf. Carrico v. City and Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (leave to amend is properly denied "if amendment would be futile"). Allegations of *pro se* plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The deficiencies identified in Plaintiffs' claims for declaratory relief discussed in Section I above cannot be cured with the allegation of additional facts. Accordingly, these claims are dismissed with prejudice. However, the Court cannot say that any amendment to Plaintiffs' claim under the OUTPA would be futile. Accordingly, Plaintiffs shall have the opportunity to file a second amended complaint on this claim.

## CONCLUSION

The Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss. The Court also GRANTS Plaintiffs' Unopposed Motion to Take Judicial Notice [41]. Plaintiffs' claim for declaratory relief as discussed in Part I of this Opinion & Order is dismissed in part with prejudice. However, Plaintiffs are granted leave to amend their claim under Oregon's

Unlawful Trade Practices Act. Plaintiffs shall file their amended complaint within 30 days of this Opinion & Order.

IT IS SO ORDERED.

Dated this \_\_\_8\_\_\_ day of October, 2019.

*Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge

17 – OPINION & ORDER